Albert A. La Verne, Plaintiff-Appellee, v. Abraham
I. Jackman, Defendant-Appellant.

Gen. No. 50,979.

First District, First Division.

June 26, 1967.

■■■

Leonard Schanfield, George S. Lavin and Henry M. Morris, and Rosenthal and Schanfield, of Chicago, for appellant.

Grossman & Grossman, of Chicago (Henry Mark Holzer, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendant appeals from a judgment of the Circuit Court of Cook County sustaining a motion for summary judgment in favor of Albert A. LaVerne, plaintiff, against Abraham I. Jackman, defendant. Plaintiff filed a petition in the Circuit Court of Cook County pursuant to the Illinois Uniform Enforcement of Foreign Judgments Act, (Ill Rev Stats 1963, c 77, §§ 88–105) to enforce a judgment of the New York Supreme Court entered May 19, 1965, in favor of the plaintiff. The judgment of the New York Court was based on an award of the American Arbitration Association in New York City in favor of the plaintiff.

Sometime in 1959, plaintiff, Dr. Albert A. LaVerne of New York City, the defendant, Dr. Abraham I. Jackman and Dr. L. J. Meduna, the latter two residing in Chicago, Illinois, agreed to publish a journal dealing with neuropsychiatry. Their agreement to publish this journal was contained in two letters, each dated April 30, 1959. The first signed by the plaintiff and the defendant, and countersigned by Dr. Meduna, provided that the plaintiff and the defendant would set up a not-for-profit corporation, under the laws of the State of New York; that Dr. Meduna would be editor-in-chief of the periodical to be published by the corporation and that each of them would be a director and share equally in the ownership of the corporation. The second letter signed by plaintiff and countersigned by defendant was addressed to the

446

defendant and stated that the plaintiff and the defendant would contribute services and financial loans to the corporation and each would have one-third control of the corporation. The final sentence of the letter was as follows:

> "If there should be any disagreement between us as to any matter under these agreements, or as to any matter relating to the affairs of the publishing company, we agree to arbitrate the matter before the American Arbitration Association in New York City."

Pursuant to these letters a membership corporation in the State of New York was incorporated by plaintiff's attorney under the name The Journal of Neuropsychiatry, Inc., and the corporation commenced publishing the "Journal of Neuropsychiatry." No corporate bylaws were adopted. In the fall of 1962, a tax dispute arose between this corporation and the Internal Revenue Service which requested a copy of the bylaws. Subsequently a standard set of not-for-profit corporation bylaws was prepared by the attorneys for the corporation and submitted to the plaintiff's attorney. These bylaws conformed with the original intention of the parties as set forth in the letters of April 30, 1959.

These bylaws were submitted to plaintiff's attorney for his comments and examination. No commentary or criticism was received, but instead another set of bylaws had already been proposed and adopted by plaintiff's attorney and four of his employees, the original incorporators of the corporation. Defendant claims that these bylaws were adopted without consultation with him, Dr. Meduna, or their attorneys and were unacceptable.

In April, 1964, the defendant and Dr. Meduna, desiring to operate the corporation under less stringent auspices of an Illinois general not-for-profit corporation

and desiring to operate the Journal in a form which could possibly gain tax-exempt approval from the Internal Revenue Service, called a meeting of the corporation's board of directors in Chicago, where the offices of the Journal had always been located. Plaintiff received notice of the meeting in writing and by telephone. Plaintiff told defendant and Meduna that he approved of the proposed transfer. He did not appear at the time and place for the meeting on April 27, 1964. He was supplied with copies of corporate minutes approving the transfer of the assets of the corporation subject to its liabilities to "Research in Organic Psychiatry, Inc.," an Illinois general not-for-profit corporation in which plaintiff, defendant and Dr. Meduna were the sole officers and directors. The new corporation continued to publish the periodical under the name "International Journal of Neuropsychiatry." In September, 1964, Dr. Meduna died. Defendant assumed the editorship of the Journal.

In December, 1964, plaintiff, following the proper procedures as outlined in the rules of the American Arbitration Association, sent defendant a demand for arbitration. In the demand the nature of the dispute was stated as being: "Whether said contract was violated by Dr. Abraham I. Jackman in combination with Dr. L. J. Meduna, now deceased." The relief sought was: "Restitution of the American Journal of Neuropsychiatry, Inc., and its assets including the Journal and all manuscripts to their rightful owners and such other relief as is proper including an appropriate accounting."

Section 39(6) of the American Arbitration Association rules provides that:

> "Each party to an agreement which provides for arbitration under these Rules shall be deemed to have consented that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these Rules and for any court

action in connection therewith or for the entry of judgment on any award made thereunder may be served upon such party by mail addressed to such party or his attorney at his last known address or by personal service, within or without the state wherein the arbitration is to be held (whether such party be within or without the United States of America), provided that reasonable opportunity to be heard with regard thereto has been granted such party."

The proper documents were mailed to defendant. The American Arbitration Association sent a notice to defendant that the Demand for Arbitration had been filed with them and a list of arbitrators from which defendant was to select in accordance with the association's rules. Notice of who had been appointed to arbitrate the dispute was sent to defendant as was a notice of the hearing. On March 4, 1965, the hearing was held before the arbitrators. After the hearing defendant was again notified that the hearing had been held and was given a certain time in which to present any proofs or evidence he desired. Defendant did not appear at the hearing, nor did he send witnesses, nor counsel, nor make any offer of proof or evidence. On March 31, 1965, the arbitrators rendered their decision and a copy was sent to defendant.

Under New York's Arbitration Law, Civil Practice Law and Rules, section 7501, provides:

"A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforcible without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which

449

arbitration is sought is tenable or otherwise pass upon the merits of the dispute."

Thereafter, on May 1, 1965, defendant was personally served in New York with a notice of motion, returnable May 11, 1965, before the New York County Supreme Court, seeking entry of a final judgment on the award. Defendant ignored these proceedings, a hearing was had and a final judgment was entered for plaintiff. Under New York law, defendant had three months to move to vacate the award or to modify it. Defendant took no action.

On June 8, 1965, plaintiff filed a petition in the Circuit Court of Cook County, pursuant to the Illinois Uniform Enforcement of Foreign Judgments Act, (Ill Rev Stats 1963, c 77, §§ 88–105), which had been enacted to implement the Full Faith and Credit Clause of the United States Constitution. Article IV, section 1, of the United States Constitution provides:

> "Full Faith and Credit shall be given in each State to public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Thus far there has been no congressional implementation of this constitutional article affecting "judicial Proceedings" or "the Manner in which such . . . Proceedings shall be proved." Prior to the enactment of uniform laws for the enforcement of foreign judgments, a new suit had to be commenced in the second state on the extra-state judgment as a new cause of action, and a new judgment was entered. In 1948, the National Conference of Commissioners on Uniform State Laws suggested that a uniform law be adopted for the enforcement of foreign judgments in an expeditious manner.

Illinois adopted the Uniform Enforcement of Foreign Judgments Act on August 2, 1951.

Defendant filed an answer to the Petition for Registration of the Judgment in which he alleged the New York Supreme Court order was void, setting forth several reasons. First, there was no jurisdiction over the person of defendant, second, the arbitrators' award went beyond their legal powers. Third, the award affects the affairs and property of a corporation which was not a party to the New York action. Finally the award was procured by the use of "omissions, misrepresentations and half truths." To support this claim, defendant alleged certain facts relating to the merits of controversy.

Plaintiff filed a motion for summary judgment to which he attached the letter agreements between the parties, including the agreement to arbitrate, the demand for arbitration, the notices sent to defendant by the American Association of Arbitration, the award of the arbitrators and certain documents filed in the action to affirm the arbitrators' decision in the New York Supreme Court.

Defendant filed no counteraffidavits but answered the motion saying that petitioner has failed to respond to the allegations of lack of jurisdiction of the subject matter and fraud in the procurement of the award. A hearing was had on the motion and an order entered granting plaintiff a summary judgment.

Defendant claims error in the Circuit Court of Cook County on the ground that defendant's answer raised genuine material issues of fact and that the judgment of the Supreme Court of the State of New York is not such a judgment or decree as may be registered and enforced under the Uniform Enforcement of Foreign Judgments Act.

The judgment of the New York Court required only the defendant to render an accounting of the affairs of the Journal of Neuropsychiatry, Inc., to plaintiff. It re-

quired only defendant to return or cause to be returned all property to the corporation which had been transferred away. Defendant was enjoined from publishing a journal under a similar name and representing that the Journal of Neuropsychiatry is defunct. It is because defendant was enjoined from certain acts and ordered to do others that he argues that the judgment may not be registered. Only foreign judgments requiring the payment of a fixed sum of money are entitled to full faith and credit and registerable under the Uniform Act.

To support his position, defendant relies on Fall v. Eastin, 215 US 1 (1909), where the United States Supreme Court affirmed a Nebraska court's refusal, in a suit to quiet title, to recognize a commissioner's deed executed in a Washington divorce action. Two justices dissented and Mr. Justice Holmes, specially concurring, stated:

> "A personal decree is equally within the jurisdiction of a court having the person within its power, whatever its grounds and whatever it orders the defendant to do. Therefore I think that this decree was entitled to full faith and credit in Nebraska."

It is apparent from the nature of the Fall case, and subsequent citations to it, that it is limited in its application to real property situations. See Williams v. North Carolina, 317 US 287 (1942); Dibble v. Winter, 247 Ill 243, 93 NE 145 (1910).

Defendant also relies on Tiedemann v. Tiedemann, 172 App Div 819, 158 NYS 851 (1916), where a New York court refused to enforce that part of a Nevada divorce decree requiring the husband to render an account of all community property and give his wife one half thereof. However, the court referred to this relief as "incidental to the main relief (and) in the nature of an execution of the judgment itself." Subsequent cases have cited Tiedemann with respect to real property.

Chesny v. Chesny, 197 Misc 768, 94 NYS2d 674 (Sup Ct 1950) ; Huber v. Huber, 26 Misc 539, 209 NYS2d 637 (Sup Ct 1960).

However, the instant case is under the Uniform Enforcement of Judgments Act which provides in section 1, (Ill Rev Stats 1961, c 77, § 88) :

> " 'Foreign judgment means *any judgment'* decree or order . . . entitled to full faith and credit in this State." (Emphasis added).

The commissioner's note to section 1, Uniform Enforcement of Foreign Judgments Act, section 1, 9A ULA states:

> "No distinction is made between judgments and decrees requiring the payment of money, ordering or restraining the doing of acts or declaring rights or duties of any other character, whether entered in law or equity, in probate, guardianship, receivership or any other type of proceedings."

In Forrest v. Fey, 218 Ill 165, 75 NE 789 (1905), our Supreme Court stated:

> "(A) decree rendered by the chancery court of Arkansas, if it had jurisdiction, has the same effect in every other state as in the state where it was rendered."

In People v. Potter, 2 Ill App2d 419, 120 NE2d 46 (1954) an Ohio divorce decree awarding custody of a child to the mother was given full faith and credit and enforced against the father.

 We see no reason why the New York court order should be denied full faith and credit and enforcement under the Uniform Act.

With regard to defendant's argument that he raised genuine material issues of fact so as to preclude summary judgment, we find no such factual issues. Defend-

ant's first pleading raised three issues; jurisdiction of the person of defendant, jurisdiction of the subject matter and fraud in procurement of the judgment. As to the jurisdiction of defendant, the motion for summary judgment clearly showed the notices which had been sent to defendant and that such notices were sent pursuant to the agreed procedure. See Tanbro Fabrics Corp. v. Hymen, 341 Ill App 396, 94 NE2d 93 (1950). Thus, there is no question that defendant had been properly notified and this issue has been abandoned on appeal.

The question of subject matter jurisdiction of the New York court does not present a factual issue but an issue of law. In Roberts v. Sauerman Bros., Inc., 300 Ill App 213, 20 NE2d 849 (1939) plaintiff moved for summary judgment in an action on a Kentucky decree granting a lien on certain machinery. The summary judgment was granted and in affirming on appeal, this court considered defendant's argument that a question of subject matter had been raised:

> "As to the jurisdiction of the Circuit Court of Fulton County, Kentucky, we invite attention to Section 48a, Chapter 51, Ill Rev Stat 1937, which required the Circuit Court of Cook County to take judicial notice of the constitution and law of Kentucky. Under the laws of Kentucky the Circuit Court of Fulton County is a court of general jurisdiction."

■ ■ Subject matter jurisdiction is defined as "the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches." Wood v. First Nat. Bank of Woodlawn, 383 Ill 515, 50 NE2d 830 (1943). The New York Supreme Court has the power to enter a judgment against defendant upon the award of the

arbitrators and its judgment must be given full faith and credit.

 Defendant's allegations of fraud all go to the merits of the litigation in New York. He claims that plaintiff's testimony omitted certain facts and misrepresented others. "There are two classes of frauds drawn in question in cases of this kind: First, there is that kind of fraud which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction; and the second, that kind of fraud which occurred in the proceedings of the court after jurisdiction had been obtained, such as perjury, concealment, and other chicanery." People v. Sterling, 357 Ill 354, 192 NE 229 (1934). It is this second variety of fraud that defendant has alleged in the instant case. However, only fraud in the procurement of jurisdiction will sustain a collateral attack and preclude enforcement of a foreign judgment. Schwarz v. Schwarz, 27 Ill2d 140, 188 NE2d 673 (1963); Wood v. First Nat. Bank of Woodlawn, supra; Evans v. Woodsworth, 213 Ill 404, 72 NE 1082 (1905).

The order of the New York Supreme Court being entitled to full faith and credit and there being no material issues of fact, the summary judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.