UNITED FOOD and COMMERCIAL WORKERS
INTERNATIONAL UNION; Douglas Dority, Individually
and as President of the United Food and Commercial Workers
International Union; John Doe; and Mary Roe *v.*
WAL-MART STORES, INC.

02-450                                                     120 S.W.3d 89

Supreme Court of Arkansas
Opinion delivered July 3, 2003

*Barrett, Johnston & Parsley*, by: *George E. Barrett* and *Edmund L. Carey, Jr.*; and *Barrett & Deacon*, by: *D.P. Marshall Jr.* and *Leigh M. Chiles*, for appellants.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Russell Gunter, Janie Willbanks Fenton*, and *Benjamin H. Shipley III*, for appellee.

R AY THORNTON, Justice. Appellants, United Food and Commercial Workers International Union, president of the union, Douglas Dority, John Doe, and Mary Roe ("UFCW"), appeal the chancery court injunction barring them from entering any Wal–Mart or Sam's Club store in the United States for the purpose of soliciting and distributing union information on the grounds that the grant of a nationwide injunction based on Arkansas trespass law was erroneous. UFCW argues that

its behavior did not violate Arkansas law concerning trespass. UFCW further asserts that Arkansas law should not apply outside of this state and that, by holding that a trespass in Arkansas supported the issuance of a nationwide injunction based on Arkansas trespass law, the chancery court committed reversible error. Appellee, Wal-Mart Stores, Inc. ("Wal-Mart"), responds that the chancery court's order is within the scope of an injunction and should stand. We conclude that the chancery court committed reversible error, and we reverse.

In September of 1999, the UFCW instituted what is referred to as a "blitz" of Wal-Mart Supercenters. In these blitzes, UFCW representatives entered Wal-Mart meat departments in several states and distributed information about its union to Wal-Mart employees. In some instances, the union representatives were asked to leave, and, when asked to leave, they always complied. There is no controversy as to whether the representatives of UFCW in Arkansas left Wal-Mart's premises upon request to do so. They promptly left, and no criminal prosecution ensued.

On September 15, 1999, Wal-Mart filed a lawsuit in the Benton County Chancery Court seeking a temporary restraining order against the UFCW. Wal-Mart sought to restrain UFCW representatives from entering Wal-Mart stores for the purpose of distributing UFCW materials. Wal-Mart claimed that this behavior was an unauthorized trespass onto Wal-Mart property, and in violation of Wal-Mart's "no solicitation/no distribution" policy. Wal-Mart stated in its complaint that its agents had contacted the UFCW by letters sent to the UFCW headquarters in several states and requested that the behavior stop; however, the incidents had continued. Wal-Mart claimed that it would be irreparably harmed if the UFCW was allowed to continue and requested a restraining order on this basis. On September 15, 1999, the chancery court entered a temporary restraining order on the basis of the "immediacy of the potential harm" to Wal-Mart. The case was removed to the federal district court. The district court stated that there was no federal question for it to review and remanded it to chancery court.

On June 14, 2000, the chancery court entered an order dissolving the temporary restraining order with respect to all Wal-Mart

stores in states other than Arkansas. It also held that the court would not make a ruling on whether the injunction should become permanent until the National Labor Relations Board ("NLRB") had determined whether the blitzes were protected activity. The chancellor's reasoning was that he had authority only to enjoin violations of law and did not have jurisdiction to enforce private company policies, such as Wal-Mart's no-solicitation rule.

On April 23, 2001, the NLRB issued a memorandum order finding that UFCW's solicitation inside Wal-Mart stores was not a protected activity under federal law. Based on the NLRB's determination, on October 15, 2001, the Benton County Chancery Court issued a new temporary restraining order that forbade UFCW from "trespassing inside any of Wal-Mart Stores, Inc.'s property, in violation of its no solicitations/no distribution rules[.]" On March 15, 2002, the chancery court made the restraining order permanent. The order prohibited UFCW representatives from the following:

> Entering into and soliciting for any purpose inside any building owned or legally occupied by Wal-Mart, which building posts a sign at its entrance prohibiting solicitation.[1]

> This prohibition and injunction includes all Wal-Mart stores, Wal-Mart Supercenters, Sam's Clubs, and neighborhood markets, as well as any other buildings owned or legally occupied by Wal-Mart within any state or territory of the United States of America.

The chancery court held that the UFCW representatives were "in violation of their license to enter Wal-Mart stores as business invitees" and that their behavior constituted an unlawful trespass on Wal-Mart property. The chancery court then issued a nationwide injunction barring UFCW representatives from entering any Wal-Mart store for the purpose of solicitation. We conclude that Wal-Mart can demonstrate no irreparable harm. For

---

[1] The chancery court did not distinguish from its prohibition against all solicitation, such activities as the United Fund, the Children's Miracle Network, and the World War II Memorial Fund. All of these solicitations are exceptions to Wal-Mart's rule against solicitation.

these reasons, the injunction in Arkansas is improper. Accordingly, we reverse.

This court reviews chancery matters, including injunctions, *de novo*.[2] *Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). The decision to grant or deny an injunction is within the discretion of the chancery judge. *Id.* The appellate court will not reverse the chancery judge's ruling granting or denying an injunction unless there has been an abuse of discretion. *Id.* When considering an order that grants or denies an injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the chancery court exceeded its discretion. *Id.* In *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516, 519 (2000), we explained: "The sole question before the appellate court is whether the trial court 'departed from the rules and principles of equity in making the order,' and not whether the appellate court would have made the order." *Id.* In reviewing the chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Kelly v. Kelly*, 341 Ark. 596, 10 S.W.3d 1 (2000). A chancellor's conclusion of law is given no deference on appeal. *Id.*

First, we must review the grounds upon which the chancery court ordered the injunction. The chancery court set out the standard used for establishing sufficient grounds for a permanent injunction: "[T]he movant must show (1) that it is threatened with irreparable harm; (2) that this harm outweighs any injury which granting the injunction will inflict on other parties; (3) a likelihood of success on the merits; and (4) that the public interest favors the injunction." *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999).

Irreparable harm is the touchstone of injunctive relief. *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954

---

[2] Amendment 80 to the Arkansas Constitution became effective on July 1, 2001, designating all courts as "circuit courts." Pursuant to Amendment 80, we no longer have separate "chancery courts" and "circuit courts." The courts have now been merged and carry the designation of "circuit courts." The *de novo* standard of review has not been affected.

S.W.2d 221 (1997). Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980). It is where an injury is a recurring one and the damages are substantial that equity will restrain by injunction. *Meriwether Sand & Gravel v. State Ex. Rel., Attorney General*, 181 Ark. 216, 26 S.W.2d 57 (1930).

Here, the chancery court states that Wal-Mart showed irreparable harm:

> [R]efusing the injunction would be a denial of justice because redress may not be available through money damages in light of the nature of the act, To show irreparable harm, the complainant must show some danger of recurrent violation of his legal rights. Additionally, injunctive relief is appropriate to prevent a threatened disturbance of the peaceable use, enjoyment, and possession of real property. Thus, an injunction is a proper remedy against wrongful trespasses.

The chancery court then described the irreparable harm that would befall Wal-Mart if the injunction were not issued:

> [T]he union workers have "disturbed Wal-Mart's peaceable use, enjoyment, and possession of its property. Moreover, Wal-Mart has a right to conduct business without interference by the UFCW.

Wal-Mart contends that the trial court was correct in its conclusion that Wal-Mart had established irreparable harm, noting the trial court's findings that Wal-Mart could not be made whole by monetary damages "as the damages were speculative and useless," and claiming that the facts adduced at trial "established that the representatives threatened to continue to trespass on Wal-Mart property despite repeated requests that they abide by the no-solicitation policy." There was no showing that UFCW representatives in Arkansas returned to Wal-Mart facilities after being asked to leave.

Wal-Mart further argues that its workers were distracted by the UFCW workers' solicitations and that the time and effort it took to enforce their no-solicitation policy detracted from other duties. Wal-Mart alleged that its employees were distracted and

that the UFCW representatives created a bad impression with customers. However, Wal-Mart failed to offer the testimony of a single Wal-Mart employee aside from the store managers who dealt with UFCW representatives.

Wal-Mart also alleged the loss of customer "good will." However, Wal-Mart offered no evidence of any customer complaints due to UFCW solicitations, and evidence showed that sales actually increased during this time. Two persons passing out literature in one store and three passing out literature in another store on a single occasion hardly supports a claim of a threat of irreparable harm. Wal-Mart simply fails to provide evidence of irreparable harm, and the trial court abused its discretion in granting the injunction. For these reasons, we hold that Wal-Mart's allegations do not constitute a showing of irreparable harm.

In addition, although Wal-Mart claims that the UFCW trespassed by "violating Wal-Mart's rights as a property owner," the cases upon which it relies for this point are inapposite. *Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972), dealt only with First Amendment rights and did not address whether a trespass occurred. *Local Union No. 313, Hotel and Restaurant Employees' International Alliance v. Stathakis*, 135 Ark. 86, 205 S.W. 450 (1918), is factually distinguishable because, in that case, the striking employees were actively disrupting the café owners' business and assaulting and intimidating patrons on the sidewalks.

As we conclude that there was no showing of irreparable harm, we need not address the remaining factors in the test for determining whether an injunction should issue.

Wal-Mart also filed a motion to strike certain portions of UFCW's reply brief for raising new arguments on appeal and for being nonresponsive to its brief. After reviewing the contents of the reply brief, it is clear that it is sufficiently responsive and raises no new arguments. We deny this motion.

Based upon our well-established rule concerning the review of injunctions, we do not delve more deeply into the merits of the case further than is necessary to determine whether the chancery court exceeded its discretion. Because there was no

showing of irreparable harm, the chancery court's issuance of an injunction was clearly erroneous. Having made that determination, we need not address the issue of whether the nationwide injunction was proper. Accordingly, we reverse and remand.

BROWN, J., and IMBER, J., concurring in part and dissenting in part.

SPECIAL ASSOCIATE JUSTICE JANET MOORE, dissenting.

CORBIN, J., not participating.

R OBERT L. BROWN, Justice, concurring in part and dissenting in part. The majority opinion is remarkable for what it does not say. I concur in the result, but I disagree with the majority's reasoning.

My rationale for a reversal and remand differs from the majority in this respect. The circuit court, in my opinion, erred in issuing a nationwide injunction. This is the pivotal issue; yet, the majority declines to address it. The circuit court enjoined trespasses by UFCW organizers nationwide and sought to have the injunction enforced by the courts of other states. In issuing the injunction, the circuit court considered union organization attempts, or "blitzes" as they were termed, in other states in addition to Arkansas to arrive at a finding of irreparable harm. In doing so, the circuit court never acknowledged that the law of trespass, whether common law or statutory law, varies from state to state and that the defenses available to UFCW organizers may vary in other states as well. This was error. In determining whether an injunction should issue, the circuit court should have considered only the facts related to UFCW activity in the Wal-Mart stores in Arkansas and Arkansas law and limited the scope of the injunction to this state.

The majority reverses the circuit court's order on grounds of no irreparable harm. What is grossly unclear in the majority opinion is whether the majority is focusing only on Arkansas events in weighing whether the harm is irreparable or rather focusing on the blitzes nationwide. The majority never says. At one point, the majority makes passing reference to UFCW repre-

sentatives in Arkansas, but the majority refrains from holding that the circuit court erred in considering "blitzes" outside of this state.

The majority is equally murky in its analysis of irreparable harm. Is it holding that there was no harm such as a civil trespass by the UFCW representatives or is it holding that there is a harm but that it is not irreparable? A reading of the opinion is not illuminating on this crucial point. Rather, the majority's conclusion is left to supreme speculation.

In its finding of irreparable harm, the circuit court said that refusing the injunction would be a denial of justice because redress may not be available through money damages. As the majority opinion notes, harm is normally considered irreparable when it cannot be adequately compensated by money damages. *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980). That is the precise principle that the circuit court employed in its analysis.

The circuit court also referred to "recurrent violation of legal rights" by repeated wrongful trespasses as another facet of irreparable harm together with Wal-Mart's right to "peaceable use, enjoyment, and possession of real property." In other words, the court found that repetitious visits of UFCW organizers in Wal-Mart stores was relevant to the trespass and irreparable-harm inquiries. The majority remarks that there is no proof of recurrent visits. The circuit court, however, found that there would be repetitive visits by UFCW representatives. Counsel for the UFCW acknowledged this at oral argument. To suggest that there would not be recurrent visits, as the majority does, discounts the circuit court's findings and counsel's acknowledgment.

The majority further states that without complaints from Wal-Mart customers about UFCW activities in Wal-Mart stores, no irreparable harm can be found and, thus, no injunction issued. I seriously question whether customer complaints are an absolute requirement for the issuance of an injunction. The correct focus, in my judgment, should be on whether a civil trespass has occurred and whether there has been a disruption of Wal-Mart business, and whether recurrent violation of legal rights will occur in the future, so as to constitute irreparable harm. David Scott, a labor relations manager for Wal-Mart, testified that the UFCW

efforts inside Wal-Mart stores were distracting employees and could drive away customers. Why should repeated business disruptions and notice to UFCW counsel by letters coupled with a posted no-solicitation policy not be enough to establish irreparable harm, if a court finds this to be the case?

The majority then seems to require Wal-Mart employee testimony about store disruption *in addition to* testimony of store managers. That is a bizarre requirement. It occurs to me that when a store manager like Chris Comer of the Springdale Sam's Club testifies to two interruptions of manager meetings by UFCW organizers and a third confrontation with a union representative, all on the same day, additional employee testimony is unnecessary. The majority opinion appears to answer Mr. Comer's testimony and conclude that this is not irreparable harm. It may not be for an Arkansas injunction. But, again, what is murky and unclear from the majority is whether the circuit court on remand should look only to events in Arkansas such as Mr. Comer's experience or events nationwide as the circuit court did initially. The majority opinion gives no decision on this critical question.

There is one final point. The majority skirts the issue of whether a civil trespass occurred on Wal-Mart's premises due to the union blitzes. That, of course, was the primary issue argued to this court by both parties in their briefs and at oral argument. The circuit court relied on Arkansas Model Jury Instructions—Civil 1107 for a compendium of Arkansas law on civil trespass: "A trespasser is a person who goes upon the premises of another without permission and without an invitation, express or implied." The circuit court further found that Wal-Mart excluded from a business invitation those UFCW organizers who entered the store only to solicit union membership.

The majority begs off discussion of the trespass issue, it says, for fear of delving into the merits of the case. But the majority's paralyzing fear is off-base. One of the cornerstones for determining whether an injunction, either preliminary or permanent, should issue is likelihood of success on the *merits*. *See Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001); *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999).

That principle requires some analysis of whether Wal-Mart has actually been harmed. Is the majority now saying that this criterion is no longer valid in Arkansas? Moreover, how else does one determine whether there has been *irreparable* harm without first examining what the alleged harm is to Wal-Mart? In this case, the harm alleged is civil trespass and repetitive civil trespasses at that. Clearly, whether civil trespasses transpired with the UFCW blitzes in the face of Wal-Mart's no solicitation policy and its letters to UFCW counsel forbidding trespassers is an issue that we should address in this appeal.

In sum, I concur that this case must be reversed because of the nationwide injunction and, unlike the majority, I would address that issue and give the circuit court some direction. On remand, should injunctive relief be pursued by Wal-Mart, the circuit court, in my judgment, should be limited to whether Wal-Mart has experienced irreparable harm in Arkansas. Regarding irreparable harm, I would answer the question of whether UFCW activities constitute civil trespass. I believe that they do. This would leave the question to be resolved as whether this harm, civil trespass, constitutes irreparable harm in Arkansas. Finally, I would not mandate that customer and employee complaints are mandatory to a finding of irreparable harm, as the majority seems to do in its opinion.

Accordingly, I concur in the result but dissent from the majority's reasoning.

IMBER, J., joins.

JANET K. MOORE, Special Justice, dissenting. I respectfully dissent from today's decision. I would uphold the circuit court's finding of civil trespass and irreparable harm as well as issuance of the temporary injunction.

Wal-Mart has a no-solicitation policy posted at the entry of every store. The UFCW instituted a nationwide "blitz" of Wal-Mart stores for the sole purpose of soliciting union membership inside Wal-Mart stores. It is undisputed that Wal-Mart allows solicitation for union memberships on its parking lots and the solicitation policy applies only to entry inside Wal-Mart's stores.

In addition to the posted no-solicitation policy, Wal-Mart notified the UFCW, by letters to its counsel, that continued entry onto store premises by union representatives for the purpose of solicitation of union memberships that would be considered an act of trespass.

In its order the circuit court relied upon Arkansas Model Jury Instruction 1107 for its definition of civil trespass: "A trespasser is a person who goes upon the premises of another without permission and without invitation, express or implied . . . ."

Based upon the posted no-solicitation policy and the letters to UFCW's counsel, the circuit judge could reasonably find UFCW's representatives did not have license to solicit inside Wal-Mart stores and to do so exceeded the business invitation conferred by Wal-Mart.

Upon finding a civil trespass by UFCW, the circuit court then found irreparable harm would likely occur if an injunction did not issue.

UFCW representatives entered Wal-Mart stores in almost every state. IN some instances the visits were repetitious and resulted in employees being distracted from their assigned work duties by the repeated entries. In at least one store employees argued with union representatives over whether the union representatives would leave the store voluntarily.

I agree with the majority that harm is considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980). However, I disagree the evidence in this case does not support a finding of irreparable harm. The issue is not whether Wal-Mart lost money, but the likelihood of continued disruption of its employees and interference with Wal-Mart business by the activities of UFCW representatives. This is the type of harm injunctions are issued to prevent.

Under the majority's ruling, one could go onto Wal-Mart's premises three days in a row for the express purpose of setting a fire. Such conduct would likely distract employees from their

work but the activity would not be enjoined absent a showing of lost profits and customer complaints.

The majority opinion avoids addressing the issue of the propriety of the nationwide injunction by finding no irreparable harm existed to support the issuance of the injunction.

The trial court has discretion to determine the geographic scope of an injunction. *See Deere & Co. v. MTD Prod., Inc.*, 41 F.3d 39 (2d Cir. 1994) and *Champion Golf Club, Inc. v. Sunrise Land Corp.*, 846 F. Supp. 742, 759 (W.D.AR. 1994). On the state court level a temporary injunction against competition by former employees in a five state area was upheld. *Richardson v. Andrews*, 718 S.W.2d 833 (Tx. App.—Houston [14th Dist.] 1986). In the case of *Carson v. Here's Johnny Portable Toilets, Inc.*, 810 F. 2d 104 (6th Cir. 1987), the issuance of a nationwide injunction to prevent dilution of the plaintiff's estate created rights under a trademark anti-dilution statute was found proper.

Moreover, an injunction is a form of judgment capable of being registered in a foreign jurisdiction. *Marie Callender Pie Shops, Inc. v. Bumbleberry Enterprises, Inc.*, 39 Ore. App. 487, 592 P.2d 1050 (1979). There is no distinction made under the Uniform Enforcement of Foreign Judgment Act between a judgment requiring the payment of money and injunction. *LaVerne v. Jackman*, 84 Ill. App. 2d 249 (1967).

The UFCW conceded personal jurisdiction in this case. Evidence was introduced regarding an organized nationwide "blitz" of Wal-Mart Stores. There was sufficient evidence before the court to sustain the issuance of the injunction.

If the standard for review of the trial court's decision is to uphold a ruling granting or denying an injunction unless there has been an abuse of discretion, the circuit court's decision in this case should be affirmed.