RHONDA K. WOOD, Associate Justice
Appellants Apprentice Information Systems, Inc., and David Randall Lamp (collectively, "AIS") appeal an interlocutory order granting a permanent injunction *41 in favor of appellee, DataScout, LLC ("DataScout"). The circuit court concluded that AIS was liable to DataScout for violations of the Freedom of Information Act ("FOIA") and the Arkansas Deceptive Trade Practices Act ("ADTPA") and for tortious interference with a business expectancy and ordered a permanent injunction against AIS. DataScout filed a motion to dismiss this appeal. We deny the motion to dismiss and hold that granting the permanent injunction was an abuse of discretion and reverse.
I. Facts
AIS is an Arkansas corporation that provides electronic data storage and management. Roughly sixty-six county collectors and forty county assessors contract with AIS for data storage and software products for their day-to-day operations. In addition, AIS maintains a fee-based website that sells data, including real-estate and personal-property records and geographic-information system data.
DataScout is AIS's competitor. DataScout provides similar data services to county officials. DataScout also gathers public data from counties and charges users a fee for access to public records and information on its website. DataScout had been obtaining the AIS-managed data it needed either individually or in small quantities directly from the counties or from AIS's website. In 2011, DataScout approached AIS about entering into a business arrangement in which AIS would provide bulk data-essentially all the counties' public data-directly to DataScout. The business relationship failed to evolve, however, and in 2013, DataScout issued a written FOIA request to AIS for several of the counties' bulk data that AIS possessed by virtue of its contracts with the counties. AIS responded in writing, explaining that AIS was not the "custodian" of any "public records".
DataScout sued AIS alleging that it was taking public data and including it on its fee-based website without the county officials' knowledge. In addition, DataScout contended that county officials could not process a bulk-data FOIA request without AIS's assistance unless they had purchased AIS's bulk-data-extract function. Therefore, it argued, AIS was the de facto custodian of the public records, and AIS had systematically denied others access to bulk data by engaging in delay tactics, deception, and charging exorbitant fees for the data. In sum, DataScout alleged that AIS had manipulated the counties to gain exclusive access and control of the counties' data, used its control of the data for its own benefit, and prevented DataScout from obtaining bulk data in a timely fashion and for a reasonable cost.
Following the liability trial, the circuit court concluded that AIS had violated FOIA, Ark. Code Ann. § 25-19-101 et seq., and the ADTPA, Ark. Code Ann. § 4-88-101 et seq., and had tortiously interfered with DataScout's business expectancy. The court held AIS was the custodian of the counties' electronic records unless the county possessed the bulk-data-extraction function. Further, the court determined that AIS had violated FOIA "by obstructing access and refusing to provide public data subject to its control," and by providing "software which impedes 'public access to records in electronic form' in violation of A.C.A. § 25-10-105(g)."
After determining liability on the above three grounds, the circuit court entered a permanent injunction that required AIS to "pay the same price for public data that other requestors pay, to provide all requestors with the same frequency of access to public data that [AIS] currently *42 enjoy[s] and to prohibit AIS from charging a fee for the public data, unless [AIS] also pay[s] that same fee." AIS filed an interlocutory appeal to this court challenging the permanent injunction while awaiting the trial on damages.
II. Jurisdiction and Standard of Review
As this matter involves a permanent injunction, we have jurisdiction to review it at the interlocutory stage pursuant to Arkansas Rule of Appellate Procedure-Civil 2(a)(6). The circuit court granted a permanent injunction against AIS after the liability phase of the trial but before the trial on damages. After hearing the merits, a court may grant a permanent injunction. City of Dover v. City of Russellville , 363 Ark. 458, 215 S.W.3d 623 (2005). This court reviews matters that sound in equity, including permanent injunctions, de novo. United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc. , 353 Ark. 902, 120 S.W.3d 89 (2003). We will reverse a decision on injunctive relief if the court abused its discretion. Id. However, we review the factual findings which result in the issuance of the injunction under the clearly erroneous standard. S. College of Naturopathy v. State of Arkansas ex rel. Beebe , 360 Ark. 543, 203 S.W.3d 111 (2005).
III. Merits
The only issue before us at this interlocutory stage is the permanent injunction; however, we must first consider the underlying merits that resulted in the court determining liability to ascertain whether the court abused its discretion in entering the permanent injunction.[1] If a party is subject to liability, then an injunction may be an appropriate remedy when the harm is of the nature that "it cannot be compensated by monetary damages." United Food & Commercial Workers Int'l Union , 353 Ark. at 907, 120 S.W.3d at 92. Thus, permanent injunctive relief is predicated on liability existing. Actual success on the merits distinguishes a permanent injunction from a preliminary injunction, which concerns itself with the likelihood of success on the merits.
A. Arkansas Freedom of Information Act
AIS argues the circuit court erroneously found it was a covered entity, ruled it violated FOIA, and granted the permanent injunction. We agree. For a record to be subject to FOIA it must be (1) possessed by an entity covered by the Act; (2) fall within the Act's definition of a public record; and (3) not be exempted by the Act or other statutes. Nabholz Constr. Corp. v. Contractors for Pub. Prot. Ass'n , 371 Ark. 411, 266 S.W.3d 689 (2007).
The county officials are covered entities because they are the custodians of the public records. The General Assembly has tasked county officials with the custodial responsibility of their public records. Ark. Code Ann. § 14-14-111 (Repl. 2013). It was clear. Ark. Code Ann. § 14-14-111(a)(2) states "[public] records are routinely kept in electronic format by the county officials who are the custodians of the records. " Id. (emphasis added). The General Assembly specifically stated its intent was to "ensure that all public records kept by county officials are under the complete care, custody, and control of the county officials responsible for the records." Ark. Code Ann. 14-14-111(a)(3)(A). FOIA provides that " '[c]ustodian' does not mean a person who holds public records solely for the purposes of storage, safekeeping, or data processing for others."
*43 Ark. Code Ann. § 25-19-103(1)(B) (Supp. 2017).
Occasionally, a private entity or individual may keep a public record for a public official; however, the public official retains the obligation to produce the public record. See City of Fayetteville v. Edmark , 304 Ark. 179, 801 S.W.2d 275 (1990) (requiring the city to produce memoranda prepared by the city's private attorney); Swaney v. Tilford , 320 Ark. 652, 898 S.W.2d 462 (1995) (holding the Arkansas Development Finance Authority must produce its outside auditor's working papers); Fox v. Perroni , 358 Ark. 251, 188 S.W.3d 881 (2004) (finding the circuit judge was custodian of personal check written by his law clerk). The General Assembly clearly intended for the responsibility of initially determining whether a record sought was a public record to rest with the public official, not a private entity. Nabholz, 371 Ark. at 418, 266 S.W.3d at 694. The circuit court's conclusion that the county officials were unnecessary parties to a dispute over access to those officials' public records was clearly erroneous. The effect would be to usurp them from their obligations in the FOIA process.
This is why in Nabholz we held a private entity alone is not a proper defendant in a FOIA action. Id. In Nabholz , the Contractors for the Public Protection Association ("CFPPA") sent a FOIA request to Nabholz as general contractor of a state project. Id. After Nabholz refused to comply, CFPPA sued under FOIA. Id. We refused to extend the scope of FOIA to Nabholz, a private entity doing business with the state. Id. We stated, "Nabholz is an Arkansas corporation and is not an entity of the state. It alone cannot be sued under the Act and directed to turn over documents under the Act." 371 Ark. at 418, 266 S.W.3d at 693. We reversed and dismissed that case. 371 Ark. at 419, 266 S.W.3d at 694.
Here, DataScout sued only AIS, a private corporation. As we held in Nabholz , DataScout cannot sue AIS alone under FOIA and direct AIS to produce public records because it is a private corporation and is not the custodian of the public records. Therefore, because AIS had no liability under the FOIA claim brought, DataScout was not entitled to permanent injunctive relief under this claim.
B. Tortious Interference with Business Expectancy
The circuit court also found in favor of DataScout on its claim that AIS tortiously interfered with its business expectancy. To establish a claim of tortious interference with business expectancy, DataScout had to prove: (1) it had a business expectancy with a third party; (2) AIS knew of the expectancy; (3) AIS intentionally interfered and caused a breach or termination of the expectancy; and (4) it resulted in damages. Stewart Title Guar. Co. v. American Abstract & Title Co. , 363 Ark. 530, 215 S.W.3d 596 (2005). Because DataScout failed to prove the first element-the existence of a business expectancy with a third party-AIS is not liable to DataScout. Therefore, DataScout was not entitled to injunctive relief under this claim.
The existence of a business expectancy must be proven with precision. Stewart Title Guar. Co. , 363 Ark. at 543, 215 S.W.3d at 603 ; Country Corner Food & Drug, Inc. v. First State Bank & Trust Co. , 332 Ark. 645, 966 S.W.2d 894 (1998). Here, the circuit court identified no third party with whom DataScout had a business expectancy. The court solely referenced a generalized business goal of "one-stop shop of public data available for paid subscribers." DataScout did not prove that it had a business expectancy with any particular *44 person or entity. The record did not identify a specific agreement that was interfered with or that did not come to fruition because of AIS's conduct. At most, DataScout's chief operating officer, Cory Scott, testified that DataScout had difficulty obtaining the bulk data when it was in the process of creating a proposal for the Arkansas Commissioner of State Lands. However, the creation of a proposal hardly amounts to a business expectancy. DataScout simply did not introduce sufficient evidence necessary to prove the existence of precise business expectancy with a specific third party. As AIS was not liable for tortious interference with DataScout's business expectancy, DataScout would not be entitled to a permanent injunction on this claim.
C. Arkansas Deceptive Trade Practices Act
Finally, the circuit court concluded that AIS violated the ADTPA "by engaging in unconscionable, false or deceptive acts, in conducting its business with county collectors and assessors across the State of Arkansas." As this matter is before us on an interlocutory appeal of the permanent injunction, we do not consider the merits of this claim because, as AIS argues, the ADTPA does not "provide for a private cause of action seeking injunctive relief." Baptist Health v. Murphy , 2010 Ark. 358, at 28, 373 S.W.3d 269, 288. We therefore hold that DataScout was also not entitled to injunctive relief pursuant to the ADTPA.
IV. Conclusion
In sum, because (1) DataScout only brought an action against a private entity under FOIA and failed to sue an entity covered by FOIA; (2) DataScout failed to prove with particularity any business expectancy with whom AIS interfered; (3) DataScout's ADTPA claim does not provide for injunctive relief, the circuit court's issuance of the permanent injunction was an abuse of discretion and we reverse.
Motion to dismiss denied; reversed.

This is also why we deny DataScout's motion to dismiss.