Cite as 2025 Ark. 81

# SUPREME COURT OF ARKANSAS

No. CV–24–147

|  |  |
|---|---|
| | Opinion Delivered: May 22, 2025 |
| TIM GRIFFIN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF ARKANSAS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS BOARD OF CORRECTIONS; AND BENNY MAGNESS, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE ARKANSAS BOARD OF CORRECTIONS<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV–23–9637]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><u>MOTION TO DISMISS DENIED; MOTION TO DISQUALIFY DENIED WITHOUT PREJUDICE; REVERSED AND REMANDED</u>. |

**RHONDA K. WOOD, Associate Justice**

The Attorney General sued the Arkansas Board of Corrections[1] (Board) for violating the Arkansas Freedom of Information Act (FOIA). Several days after the complaint was filed, the circuit court ordered the Attorney General to invoke statutory procedures or "reach an accommodation" for the Board's hiring of special counsel for the current litigation; if not done, the court threatened to dismiss the complaint without prejudice. The circuit court expressed concern because the Attorney General had sued "his own client." The Attorney General responded that he could not legally comply with the court's order. When thirty days passed, the circuit court dismissed the complaint without prejudice. On

---

[1]He also sued members of the Board in their official capacities.

appeal, we hold that the Attorney General could not legally comply with the order. We accordingly reverse the order of dismissal and remand for further proceedings.

## I. *Factual Background*

On December 15, 2023, the Attorney General sued the Arkansas Board of Corrections. The allegations, later amended, included claims that the Board violated the open-meetings provision of the FOIA and failed to adequately respond to the Attorney General's open-records request. The complaint sought declaratory relief that the Board had violated the FOIA as well as injunctive relief from any decisions that flowed from the relevant meetings and executive sessions. Specifically, the Attorney General asked the circuit court to enjoin the Board's employment of a special counsel.

Four days after the complaint was filed, the circuit court sua sponte entered an order finding that it could not go forward with the action unless the Attorney General certified special counsel for the Board. The court made findings of fact and conclusions of law and noted that "from a procedural standpoint . . . the Attorney General has sued his own clients." The court found that the Attorney General had violated Arkansas Code Annotated section 25-16-702 (Repl. 2024), which establishes statutory duties surrounding appointment of special counsel, and ordered that the Attorney General "reach an accommodation" about representation within thirty days or it would dismiss the complaint without prejudice. The following are the relevant paragraphs from the order:

7.      The court is unable to proceed with the merits of this action at this time because the Attorney General is in clear violation of his mandated constitutional and statutory duty to either represent the state defendants or to initiate the special counsel procedure set forth in § 25-16-702. Clearly the state defendants are entitled to legal counsel.

2

8. The Attorney General is given thirty (30) days from entry of this Order in which to comply with his constitutional and statutory duty to either reach an accommodation with the state defendants concerning authorization and payment of the state defendants' current special counsel or invoke the above recited statutory process to assist the state defendants in obtaining special counsel to represent them in this matter.

9. In the event the Attorney General has not accomplished, within thirty (30) days, one of the two enumerated methodologies for securing special counsel for the state defendants, this case will be dismissed without prejudice for the Attorney General's clear violation of his statutorily prescribed duties mandated by the Arkansas General Assembly.

In short, the case derailed and never proceeded to a hearing on the merits of the FOIA complaint.

The Attorney General moved to vacate the circuit court's order, arguing that it could not certify special counsel until the Board asked for legal representation. The Attorney General argued further that, in any event, it alone could not accommodate payment because additional authorization must come from either the Governor or the Legislative Council. In sum, the Attorney General argued he could not comply with the court's order.

Various other motions and pleadings were filed in the interim period. For example, the Board filed a motion to disqualify the Attorney General, and the Attorney General filed a motion to disqualify special counsel for the Board. The Board also filed a motion for Rule 11 sanctions, a motion for summary judgment, and a motion for a show-cause order. The Board's counsel throughout this case has been the special counsel it had retained under the disputed FOIA meetings.

The circuit court held a brief hearing in January 2024. The court spent most of that time explaining the status of the case. Only a short portion involved arguments from counsel. The main inquiry was whether the Attorney General had done more than email

3

the Board asking if it was planning to certify its need for counsel and whether the Board responded to the email. The answer from both was negative. The court ended the hearing after that short exchange and entered an order finding the Attorney General "failed to make material and good faith efforts" to help the Board obtain special counsel. The order cited email correspondence in the pleadings to show that the Attorney General's office "refused to communicate with the [Board's] current special counsel." The court accordingly dismissed the Attorney General's complaint without prejudice.

The Attorney General filed an appeal. Once the record was lodged, the parties filed motions with this court. First, the Attorney General filed a motion to disqualify the Board's special counsel. The arguments in this motion largely mirrored the arguments the Attorney General made in a similar motion to disqualify filed in circuit court; as a reminder, the circuit court never ruled on this motion to disqualify. Next, the Board moved to dismiss the Attorney General's appeal; in short, the Board argued that the circuit court's order was not a final, appealable order because the complaint could still be refiled as it was dismissed without prejudice. We took both motions with submission of the appeal.

## II. *Motion to Dismiss*

We address first the jurisdictional issue raised by the Board's motion to dismiss the appeal. The Board argues that because the court dismissed the case without prejudice, the Attorney General may refile the lawsuit, thus rendering the order not final for purposes of appeal. We deny the motion.

Generally, when a complaint has been dismissed without prejudice, a party may either appeal the dismissal or elect to plead further. *Orr v. Hudson*, 2010 Ark. 484, at 6, 374

4

S.W.3d 686, 691; *Robinson v. Felts*, 2025 Ark. 67, at 2. If the party chooses the first course, and the appeal is affirmed, then the dismissal converts to a dismissal with prejudice. *Id*. This is the general rule.

But a different rule applies when a party voluntarily dismisses one of multiple claims in order to appeal an adverse judgment on the remaining claims. In that situation, the appeal must be dismissed because the appealed order will not be final. *Convent Corp. v. City of N. Little Rock*, 2018 Ark. 45, at 2. "A party with multiple claims cannot voluntarily dismiss without prejudice a claim that has not been ruled on by the circuit court in order to create a final, appealable order." *Id*.

Nor can a defendant appeal from an order granting a plaintiff's motion for nonsuit under Ark. R. Civ. P. 41(a). *Beverly Enters.-Ark., Inc. v. Hillier*, 341 Ark. 1, 4, 14 S.W.3d 487, 488 (2000). So too with the nonsuit of a compulsory counterclaim. This also creates finality problems when the initial claim has been appealed because the counterclaim can be refiled; therefore, the order resolving the initial claims is not final. *Bevans v. Deutsche Bank Nat'l Tr. Co.*, 373 Ark. 105, 110, 281 S.W.3d 740, 744 (2008). Nor can a party appeal from a first dismissal for failure to serve process within 120 days of filing the complaint under Ark. R. Civ. P. (4)(i). *Hill v. Dennis*, 2019 Ark. 338, at 2.

The Attorney General elected to appeal from this dismissal rather than refile. Under the general rule, this is an authorized avenue to appeal from a lower-court order. And none of the narrower exceptions to this general rule apply: the circuit court's order covered all claims included in the complaint; nor did the dismissal follow from a motion by the Attorney General to nonsuit his own lawsuit; nor did the Board file any counterclaims; and service

5

of process was never at issue. We therefore have appellate jurisdiction to review the circuit court's order dismissing the complaint without prejudice.

III.  *Law and Analysis*

On appeal, the Attorney General seeks reversal of the circuit court's dismissal order. It argues that the circuit court dismissed the action for his failure to accomplish what he legally did not have sole authority to do. In response, the Board contends the circuit court had authority to dismiss the action under Arkansas Rule of Civil Procedure 41(b). Because we find the circuit court abused its discretion, we reverse and remand.

The Board argues that the dismissal was appropriate under Rule 41(b),[2] which gives circuit courts authority to dismiss cases in which a plaintiff has failed to satisfy a court order:

> *Involuntary Dismissal.* In any case in which there has been a failure of the plaintiff to comply with these rules or any order of court or in which there has been no action shown on the record for the past 12 months, the court shall cause notice to be filed and sent to the attorneys of record through the court's electronic filing system or by mail, and sent by mail to any party not represented by an attorney, that the case will be dismissed for want of prosecution unless on a stated day application is made, upon a showing of good cause, to continue the case on the court's docket. A dismissal under this subdivision is without prejudice to a future action by the plaintiff unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits.

We review Rule 41(b) dismissals for abuse of discretion. *Wolford v. St. Paul Fire & Marine Ins. Co.*, 331 Ark. 426, 435, 961 S.W.2d 743, 748 (1998). "An abuse of discretion may be manifested by an erroneous interpretation of the law." *Park Apartments at Fayetteville, LP v.*

---

[2]The Board argued alternatively the dismissal was a valid sanction for civil contempt. Because civil contempt seeks to protect the interests of others, not the court, it is coercive and there must be an opportunity to purge the contempt. *Ivy v. Keith*, 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002). There was no post sanction (the dismissal) opportunity to purge; therefore the court's order was not one of contempt.

*Plants*, 2018 Ark. 172, at 3, 545 S.W.3d 755, 757. And the issue raised here about statutory interpretation is a question of law. *Worsham v. Bassett*, 2016 Ark. 146, at 3, 489 S.W.3d 162, 164.

According to the allegations in the Attorney General's complaint, the Board went into an executive session, returned, and hired special counsel. The Attorney General responded with a FOIA action against the Board and sought to rescind the hiring. The circuit court sua sponte entered an order directing the Attorney General to comply with certain provisions concerning special counsel within thirty days. These were remedies that the Board never asked the circuit court to assist with or otherwise accommodate. The Board never expressed an issue with its procurement of special counsel with the current litigation. The merits of the case involved the retention of special counsel in relation to the FOIA.

Reviewing the underlying order first, we must determine whether the Attorney General could legally comply by accommodating payment and authorization of the Board's special counsel or, as an alternative, initiating the special counsel procedure set forth in Arkansas Code Annotated section 25-16-702. The Attorney General maintains that his duty to represent the Board depended on the Board initiating and certifying its need for legal representation. Until that happened, he argues, the statute imposed no duties. He is correct.

The Arkansas Constitution directs the Attorney General to "perform such duties as may be prescribed by law." Ark. Const. art. 6, § 22. Many of these duties derive from statutory law. *E.g.*, *Rutledge v. Remmel*, 2022 Ark. 86, 643 S.W.3d 5. One statute provides that "[t]he Attorney General shall be attorney for all state officials, departments, institutions, and agencies." Ark. Code Ann. § 25-16-702(a). But that duty depends on the relevant entity

7

certifying its need for representation: when one of those entities "needs the services of an attorney, the matter shall be certified to the Attorney General for attention." *Id.*

A separate provision of section 25-16-702 allows the Attorney General to employ special counsel to represent a state entity; but various other authorizations are required, including approval by the Governor and the Legislative Council:

> If, in the opinion of the Attorney General, it shall at any time be necessary to employ special counsel to prosecute any suit brought on behalf of the state or to defend a suit brought against any official, board, commission, or agency of the state, the Attorney General, with the approval of the Governor, may employ special counsel. The compensation for the special counsel shall be fixed by the court where the litigation is pending, with the written approval of the Governor and the Attorney General. The Attorney General shall not enter into any contract for the employment of outside legal counsel without first seeking prior review by the Legislative Council.

Ark. Code Ann. § 25-16-702(b)(2). And if for any reason the Attorney General "fails to render service *when requested*," then "the Governor may appoint counsel to look after the matter or may authorize employ of counsel" by the state entity. Ark. Code Ann. § 25-16-702(c) (emphasis added).

We have held that the Attorney General has no duty to represent a state agency until a certified request for services has been made. In *Parker v. Murry*, the Attorney General tried to intervene in ongoing litigation over a tax dispute defended by the Commissioner of Revenues. We held the Attorney General could not intervene and assume control of the litigation unless the Commissioner "needs his services and so certifies this need to the Attorney General." *Parker v. Murry*, 221 Ark. 554, 561, 254 S.W.2d 468, 471 (1953). In *Taylor v. Zanone Props.*, 342 Ark. 465, 474, 30 S.W.3d 74, 79 (2000), we held that state agencies were not bound by a court order where the Attorney General represented the State of Arkansas *ex rel.* This is because "the Attorney General represents the agencies and

8

departments of the State only when his services are needed *and the request for services has been certified by the agency* to the Attorney General." *Id.* (emphasis added).

As much as the circuit court was ordering the Attorney General to certify the Board's need for special counsel before the Board had made such a request, that was based on a clearly erroneous application of the law. To begin, the Board did not certify its need for representation by the Attorney General. In fact, it pled it does not need the Attorney General's involvement at all.[3] We simply cannot interpret the statute to mean that the circuit court can order the Attorney General to certify special counsel when an agency has not even requested it. This is counter to our caselaw that the agency must take the first step. In its absence, the Attorney General had no statutory duty under section 25-16-702.

Likewise, the Attorney General alone does not control the purse. Section 25-16-702 provides that hiring special counsel requires review from the Legislative Council and that any payment would require written approval from the Governor. The Attorney General has no control over these separate, independent constitutional entities. The circuit court's order presumed that the Attorney General could act in a vacuum. Because we conclude the underlying order rested on an erroneous interpretation of section 25-16-702, we hold it was an abuse of discretion for the circuit court to order such compliance and then dismiss the complaint for noncompliance under Rule 41(b).[4] We accordingly reverse the circuit court's order dismissing the complaint and remand for further proceedings.

---

[3]The Board has been represented by counsel throughout the case, although whether the Board statutorily complied with obtaining counsel and can be reimbursed for counsel are separate issues.

[4]The Board also argues that it had authority to hire special counsel as a "constitutional officer" under Ark. Code Ann. § 25-16-711. But this provision is not before us in this

9

IV. *Motion to Disqualify*

Finally, the Attorney General has asked us to disqualify the special counsel for the Board. This issue has been raised but not ruled on in the circuit court. On remand, the circuit court will be in a better position to rule on this motion. But at this stage in the proceedings, no findings of fact have been made on those issues. This is where the interpretation of section 25-16-711 will occur along with relevant facts. Appellate courts generally don't engage in fact-finding. *Hutchinson v. Armstrong*, 2022 Ark. 59, at 7, 640 S.W.3d 395, 399. In this procedural posture, given the lack of factual development about the special counsel's employment and the circumstances of his retention, it would be improper for us to make a definitive determination about his qualification to serve as lawyer for the Board.[5] *E.g.*, *Jenkins v. Mercy Hosp. Rogers*, 2021 Ark. 211, at 13, 633 S.W.3d 758, 767. We therefore deny the motion without prejudice.

Motion to dismiss denied; motion to disqualify denied without prejudice; reversed and remanded.

Special Justice BUD CUMMINS joins.

WOMACK, J., dissents.

BRONNI, J., not participating.

---

appeal. That issue is irrelevant for the review of the circuit court's order. The basis for the circuit court's order dismissing the case was section 25-16-702, and the scope of our review is limited to interpreting that provision.

[5]That said, we do not condone counsel in litigation refusing to cooperate professionally with other counsel who have entered an appearance in the matter. Even if there is a dispute over counsel's official role and employment, we expect attorneys in Arkansas to communicate with each other while that is sorted out through the orderly process of law.

SHAWN A. WOMACK, Justice, dissenting. "Because the State—absent an express constitutional provision to the contrary—shall never be a defendant in any of its courts, Arkansas courts lack jurisdiction to hear" this case.[1] Although this court has said that sovereign immunity is not implicated when the State brings a lawsuit,[2] that is true only when the State sues a non-state actor or entity.[3]

Obviously, in most situations when the State brings a lawsuit, sovereign immunity is not implicated because the lawsuit does not make the State a defendant.[4] But in those rare instances when the State is both the plaintiff and the defendant—as it is here—sovereign immunity applies, and the underlying lawsuit is barred.[5] Therefore, even though the circuit court was right to dismiss Griffin's lawsuit against the Board, the dismissal should have been with prejudice and because of sovereign immunity.[6] The case should be reversed and dismissed, accordingly.

---

[1]*Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[2]*Monsanto Co. v. Ark. State Plant Bd.*, 2019 Ark. 194, at 4, 576 S.W.3d 8, 11.

[3]*See generally Travelers Indem. Co. v. Bd. of Trs. of Univ. of Ark.*, 2022 Ark. 146, 646 S.W.3d 361.

[4]Ark. Const. art. 5, § 20 ("The State of Arkansas shall never be made *defendant* in any of her courts.") (emphasis added).

[5]*Id.*

[6]*See League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d at 327 (Womack, J., dissenting) (explaining that sovereign immunity implicates subject-matter jurisdiction).

That being said, I take this opportunity to briefly address the underlying issue of Hall, Booth, Smith's representation of the Board in this case. Griffin has made a persuasive argument that the Board's retention of Hall, Booth, Smith is illegal under Arkansas Code Annotated sections 25-16-702 and 25-16-705. However, a more appropriate way to challenge this issue is through an illegal-exaction claim.[7]

An illegal exaction is "any exaction that is either not authorized by law or is contrary to law."[8] For a public-funds illegal-exaction claim, "the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent[.]"[9] While that appears to be the essence of Griffin's claims here, if it had been brought as an illegal-exaction claim against the Board for its retention of Hall, Booth, Smith, sovereign immunity would be no obstacle to the plaintiff.[10]

Indeed, the Board is not the only potential defendant in such a case. The person or entity who received the illegally spent tax dollars may also be held accountable.[11] The

---

[7] *See Nelson v. Berry Petroleum, Co.*, 242 Ark. 273, 277, 413 S.W.2d 46, 49 (1967) ("Illegal Exaction means far more than the mere collection of unlawfully levied taxes. With little limitation, almost any misuse or mishandling of public funds may be challenged by a taxpayer action. Even paying too much for cleaning public outhouses has been held by our courts as basis for a taxpayer's right to relief. Any arbitrary or unlawful action exacting taxes or tax revenues may be restrained and annulled by a taxpayer affected by such procedure.").

[8] *Sanford v. Walther*, 2015 Ark. 285, at 4, 467 S.W.3d 139, 143.

[9] *Id.*

[10] *Rutledge v. Remmel*, 2022 Ark. 86, at 10, 643 S.W.3d 5, 11 (Womack, J., concurring).

[11] *Parsons v. Preferred Fam. Healthcare, Inc.*, 2023 Ark. 56, at 7–9, 662 S.W.3d 654, 659–60.

remedies available to a taxpayer challenging the alleged illegal exaction include both a refund of the illegally spent tax dollars and an injunction against further illegal expenditures.[12]

I respectfully dissent.

*Tim Griffin* Att'y Gen., by: *Noah P. Watson*, Deputy Att'y Gen., and *Carl F. "Trey" Cooper III*, Sr. Ass't Att'y Gen., for appellant.

*Hall Booth Smith, P.C.*, by: *Abtin Mehdizadegan* and *Joseph C. Stepina*, for appellees.

---

[12]*Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 392, 101 S.W.3d 211, 219 (2003); *Starnes v. Sadler*, 237 Ark. 325, 329, 372 S.W.2d 585, 587 (1963).

13