Cite as 2025 Ark. 164

# SUPREME COURT OF ARKANSAS

No. CV-24-656

|  |  |
|---|---|
| | **Opinion Delivered:** October 30, 2025 |
| RACHELLE EVANS IN HER OFFICIAL CAPACITY AS COUNTY CLERK OF CLEBURNE COUNTY, ARKANSAS<br>APPELLANT | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12CV-24-209] |
| V. | HONORABLE HOLLY MEYER, JUDGE |
| RAYMOND JAY HARRISON<br>APPELLEE | <u>REVERSED AND DISMISSED</u>. |

**SHAWN A. WOMACK, Associate Justice**

This appeal concerns both the 2024 and 2026 general elections. Rachelle Evans, the Cleburne County Clerk, appeals the circuit court's order requiring her to certify a local ballot initiative for the 2024 general election. By virtue of Arkansas Code Annotated section 14-14-915(b)(3), the order requires Evans to certify the initiative for the 2026 general election. But because the initiative petition was not timely filed for either the 2024 or 2026 general election, we reverse and dismiss.

## I. *Background*

On or before June 18, 2024, Raymond Harrison, a citizen of Cleburne County, submitted a local initiative petition to Evans for the voters' consideration in the 2024 general election. The initiative was titled "Hand Marked, Hand Counted Paper Ballot Ordinance of 2024" and was styled as a countywide ordinance. Evans rejected the initiative for filing after

she determined that there were insufficient signatures because some of the paid canvassers were not residents of Arkansas, as required by Arkansas law.[1]

In response to Evans's determination, the canvassers in question filed supplemental affidavits on August 5, 2024, which reflected an Arkansas address for their residencies at a hotel in Conway. Each supplemental affidavit explained "[t]hat the address I listed on the petitions with signatures that I submitted and collected list[s] the address of my domicile and did not list my Arkansas address where I was residing when collecting signatures." Each supplemental affidavit listed the same address for every canvasser: 820 Bill Dean Drive, Conway, Arkansas.

Still, Evans refused to count the signatures that the supposed nonresident canvassers collected. Harrison then filed a lawsuit against Evans seeking a writ of mandamus and an injunction. Harrison sought a writ of mandamus to "order [Evans] to count all valid signatures, including the ones that had been cured by canvassers who have listed their Arkansas address, certify the petition as sufficient if there are a sufficient number of signatures and timely forward the petition to the county board of election commissioners[.]" He sought an injunction to "enjoin the county clerk from rejecting the measure" "if the measure has a sufficient number of signatures and the title and popular names are appropriate."

After an expedited hearing, the circuit court entered an order granting both a writ of mandamus and an injunction in favor of Harrison and against Evans. The order required Evans to "count all signatures on all petitions submitted with the Hand Marked, Hand Counted Paper Ballot Ordinance of 2024 which initially listed residences of canvassers as being outside of the state of Arkansas but were later cured by those canvassers who submitted affidavits of residency."

---

[1]Ark. Code Ann. § 7-9-103(a)(6) (Supp. 2021); Ark. Code Ann. § 7-9-109(a) (Supp. 2021); Ark. Code Ann. § 7-9-126(b)(3) (Supp. 2023).

The order also required that "[i]f, after counting all signatures on all petitions, including the ones cured by subsequent affidavit, there are a sufficient number of signatures required by statute, [Evans] is enjoined and prohibited from refusing or otherwise failing to certify the measure as sufficient to the county board of election commissioners."

Evans timely appealed the order but did not seek expedited consideration. Because this case concerns the interpretation and construction of the Arkansas Constitution and pertains to elections and election procedures, jurisdiction is proper in this court.[2]

## II. *Discussion*

The focus of the parties' initial briefing in this appeal was on (1) who has the burden of proof when an initiative is challenged, and (2) what constitutes a resident under Arkansas Code Annotated section 7-9-126(b)(3).[3] We ordered two rounds of supplemental briefing, eventually asking the parties to address a problem that the record revealed in this case: whether a circuit court can require a county clerk to certify a local ballot initiative when the proponent has failed to timely file it. We hold that a circuit court cannot.

Writs of mandamus exist "to enforce an established right or to enforce the performance of a duty."[4] We review a circuit court's decision to grant a writ of mandamus for an abuse of discretion.[5] Importantly, "an erroneous interpretation of the law" can amount to an abuse of

---

[2]Ark. Sup. Ct. R. 1–2(a)(1), (4).

[3](Supp. 2023).

[4]*Rogers v. Ark. Dep't of Corr.*, 2022 Ark. 19, at 3, 638 S.W.3d 265, 268.

[5]*Id.*

discretion.[6]  And because this presents a matter of constitutional interpretation, our review of that specific issue is de novo.[7]  Relatedly, a party is entitled to an injunction only when "a party is subject to liability" and "the harm is of the nature that 'it cannot be compensated by monetary damages.'"[8]  A movant must satisfy the following elements before obtaining a permanent injunction: (1) there is irreparable harm; (2) the harm outweighs any injury that the injunction will inflict on other parties; (3) there is actual success on the merits; and (4) the public interest favors the injunction.[9]  Unlike our review of a circuit court's decision to grant a writ of mandamus, we review a circuit court's decision to grant an injunction de novo.[10]

Article 5, section 1 of the Arkansas Constitution provides that "[i]n municipalities and counties the time for filing an initiative petition shall not be fixed at less than sixty days nor more than ninety days before the election at which it is to be voted upon[.]"  For the 2024 general election, this required Harrison to file the initiative with Evans no sooner than August 7, 2024, and no later than September 6, 2024.  Harrison, however, filed the petition on or

---

[6]*Griffin v. Ark. Bd. of Corrs.*, 2025 Ark. 81, at 6.

[7]*Cherokee Nation Businesses, LLC v. Gulfside Casino P'ship*, 2021 Ark. 183, at 8, 632 S.W.3d 284, 289.

[8]*Apprentice Info. Sys., Inc. v. DataScout, LLC*, 2018 Ark. 146, at 4, 544 S.W.3d 39, 42 (quoting *United Food & Com. Workers Int'l Union v. Wal-Mart Stores, Inc.*, 353 Ark. 902, 907, 120 S.W.3d 89, 92 (2003).

[9]*City of Dover v. City of Russellville*, 363 Ark. 458, 460, 215 S.W.3d 623, 625 (2005); *see also DataScout, LLC*, 2018 Ark. 146, at 4, 544 S.W.3d at 42 ("Actual success on the merits distinguishes a permanent injunction from a preliminary injunction, which concerns itself with the likelihood of success on the merits.").

[10]*Id.*

4

before June 18, 2024.[11] This is well before the ninety-day cutoff provided in article 5, section 1.

On the other hand, Arkansas Code Annotated section 14-14-915(b)(1) provides that "[a]ll petitions for initiated county measures shall be filed with the county clerk not less than ninety (90) calendar days nor more than one hundred twenty (120) calendar days prior to the date established for the next regular election." This statutory timeline, however, is in "clear and unmistakable conflict" with article 5, section 1; therefore, we hold that it is unconstitutional.[12]

The same is true for Arkansas Code Annotated section 14-14-915(b)(3), which purports to delay certification of local initiative petitions to the "following regular election" when the initiative has been "certified sufficient to the county board of election commissioners . . . less than seventy (70) calendar days prior to a regular general election." This, too, clearly and unmistakably conflicts with article 5, section 1 because it allows a petition to be filed "more than ninety days before the election at which it is to be voted upon[.]"[13] We therefore hold that Arkansas Code Annotated section 14-14-915(b)(3) is unconstitutional to the extent it

---

[11]In his second supplemental brief, Harrison argues that the record does not establish when he filed his original petition with Evans. Although it is true that there is not a dated copy of his original petition in the record, the record reveals that he likely filed it on or before June 18, 2024, when Harrison's attorney filed a compliance letter with Evans. But under no circumstances did he file it later than August 5, 2024—the date on which the canvassers filed their curative affidavit.

[12]*Armstrong v. Thurston*, 2022 Ark. 167, at 5, 652 S.W.3d 167, 172.

[13]Ark. Const. art. 5, § 1.

5

allows a local initiative petition to be certified for an election that is scheduled more than ninety days after the petition was filed.

The controlling timeline here is article 5, section 1 of the Arkansas Constitution.[14] Put simply, when the proponent of a local ballot initiative fails to timely file his petition, a circuit court cannot require a county clerk to certify the initiative for that election. Nor can the circuit court "delay[]" the certification "until the following regular election" if the initiative has not been filed within the article 5, section 1 timeline for that next regular election.[15] Because of this, we expressly overrule *Armstrong v. Sturch*,[16] *Fine v. City of Van Buren*,[17] and *Robie v. Bolton*,[18] all of which misinterpreted a nearly identical but now-repealed constitutional provision.[19]

The circuit court's decision to order certification in this case is an abuse of discretion because such a decision stems from an application of a statutory scheme that is in direct conflict

---

[14]Harrison also argues that, because he acted in good faith in relying on Arkansas Code Annotated section 14-14-915's unconstitutional timeline, it "violates basic principles of fairness and equity[]" to hold that statute's timeline unconstitutional and throw out his petition. Harrison couches this argument under the guise of equitable estoppel, but that doesn't apply here. As relevant to this case, equitable estoppel is implicated when someone detrimentally relies on the statement of a government agent. *Foote's Dixie Dandy, Inc. v. McHenry*, 270 Ark. 816, 824–25, 607 S.W.2d 323, 327 (1980). *McHenry*, however, simply has no relevance to the situation here. Harrison knew (or at least should have known) about both the statute and the constitutional provision governing the timeline for filing local initiative petitions. But he chose to go with the longer timeline in the statute instead of the controlling timeline in the constitution. It is a risk he took—one that did not pay off.

[15]Ark. Code Ann. § 14-14-915(b)(3) (Repl. 2013).

[16]235 Ark. 571, 577, 361 S.W.2d 77, 81 (1962).

[17]237 Ark. 29, 33, 371 S.W.2d 132, 135 (1963).

[18]260 Ark. 429, 429, 541 S.W.2d 310, 310 (1976).

[19]Ark. Const. amend. 7.

with our constitution.[20]  Therefore, Harrison failed to show he had an established legal right that required Evans to certify the untimely initiative.  In the same vein, Harrison is not entitled to an injunction, because a county clerk cannot lawfully certify an untimely initiative.[21]  Put another way, Because Harrison's claims against her have no chance of success, Evans is not liable for her refusal to certify the untimely initiative.[22]  All in all, the circuit court could not lawfully require Evans to certify an untimely initiative, so Harrison is not entitled to any relief.

The dissent complains that by enforcing the Arkansas Constitution, we have "depart[ed] from neutrally arbitrating the issues argued by the parties[.]"  To support this claim, the dissent cites Justices Scalia and Thomas and claims they would never endorse the track we take today.  But the dissent has cherry-picked parts of the cited opinions, while leaving out what matters.

Take, for example, the citation to then-Judge Scalia's opinion in *Carducci v. Regan*.[23]  The dissent quotes that case for the proposition that "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."[24]  But the dissent forgets to quote the punchline: "Of course not all legal arguments bearing upon the issue in

---

[20]*See Griffin*, 2025 Ark. 81, at 6.

[21]*See* Ark. Const. art. 5, § 1.

[22]*DataScout, LLC*, 2018 Ark. 146, at 4, 544 S.W.3d at 42; *City of Dover*, 363 Ark. at 460, 215 S.W.3d at 625.

[23]714 F.2d 171, 177 (D.C. Cir. 1983).

[24]*Id.*

7

question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research."[25]

Here, we are *at most* supplementing the contentions of counsel.[26] After the issue of timeliness was raised during oral argument, we ordered a separate round of supplemental briefing for the parties to address issues that were readily apparent from the face of the record— issues that neither party's counsel was prepared to discuss at oral argument. This leaves no doubt that we are resolving the issues before us, which makes the dissent's citation to Justices Scalia and Thomas's dissent in *Jefferson v. Upton* even more confusing.[27] There, Justices Scalia and Thomas complain about the respondent suffering a loss "without *ever* having an opportunity to address the merits of the statutory question the Court decides."[28] Here, however, both parties had at least two opportunities to make the arguments on the issues that the court decides today—first at oral argument and then during the second round of supplemental briefing.

But even if we had not ordered supplemental briefing to address these issues, the idea of party presentation is not some sacred principle that we must uphold as absolute and infallible. It should go without saying, but "[w]e took an oath to uphold the Arkansas Constitution, not the *Arkansas Reports*."[29] When the record reveals such an apparent violation of our

---

[25]*Id.*

[26]The dissent also fails to acknowledge the fundamentally different roles of an intermediate appellate court and a jurisdiction's court of last resort.

[27]560 U.S. 284, 301 (2010) (Scalia, J., dissenting).

[28]*Id.* (emphasis in original).

[29]*Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 23, 639 S.W.3d 319, 330 (Womack, J., dissenting).

constitution—a violation that affects every single Arkansan anytime there is an election for a local initiative—we are perfectly within our right to address it.[30]

Finally, the dissent goes to all this trouble to come up with reasons why we are wrong in our analysis and holding but never explains how the case should be resolved. Presumably, the dissent would want to affirm the circuit court's order requiring Evans to certify Harrison's initiative petition. Yet the dissent does not (and cannot) explain how such a result is constitutional. Today, the Arkansas Constitution prevails.

III. *Conclusion*

Because the initiative petition was untimely for the 2024 general election and is untimely for the 2026 general election under article 5, section 1 of the Arkansas Constitution, the circuit court erred when it required Evans to certify the initiative. We reverse and dismiss.

Reversed and dismissed.

BAKER, C.J., and HUDSON and WOOD, JJ., dissent.


**RHONDA K. WOOD, Justice, dissenting.** As then-Judge Antonin Scalia explained, "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."[1] Today the court departs from neutrally

---

[30]The dissent does not claim that the record does not support our holding. Instead, the dissent laments the fact that we noticed obvious problems with the underlying petition. But no objective reading of the record will reveal that Harrison timely filed his petition with Evans. To turn a blind eye to such a glaring constitutional violation in this specific case would be a dereliction of our duty.

[1]*Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (explaining the court is not precluded from supplementing the parties' arguments but that it would not address an issue not

9

arbitrating the issues argued by the parties and instead becomes investigator and inquisitor. Because Justice Scalia's approach better protects due process and aligns with our roles as justices, I respectfully dissent.[2]

The majority raises legal issues on its own, finds facts absent from the record, and leaps over settled law to reach its decision. The majority concludes two statutes are unconstitutional and that the petition was filed outside the constitutional timeline. The majority's conclusion rests on its own factual finding that the petition had to be filed on or before the curative affidavits were signed on August 5—an assertion on which the record is silent. It is an assumption that relies on there being no other filing, again which we know from the record did happen. We just do not know the date.

Certainly, those curative affidavits were notarized on August 5. (Some were even notarized the day before.) But we do not know when the cured petition was filed. The majority has either decided the cured petition was never filed or that it was filed too early without any evidence one way or the other in the record.[3] Again the majority does not explain this. For all

---

raised); *see also Jefferson v. Upton*, 560 U.S. 284, 301 (2010) (Scalia, J., and Thomas, J., dissenting) ("Our refusal to abide by standard rules of appellate practice is unfair to the Eleventh Circuit, whose judgment the Court vacates, and especially to the respondent here, who suffers a loss in this Court without ever having an opportunity to address the merits of the statutory question the Court decides.").

[2]The majority attacks the *Carducci* quote for being incomplete and because the case is irrelevant. Yet the material the majority adds about the court supplementing arguments was explained in our footnote 1. And the case is directly on point: in *Carducci*, the court refused to address the unraised constitutional claim. 714 F.2d at 177 ("But where counsel has made no attempt to address the issue, we will not remedy the defect, especially where, as here, 'important questions of far-reaching significance' are involved.").

[3]*See* Appellee's Second Supp. Brief, at 3–4 ("This brief explains why this court is unable to tell that the cured petition was not timely filed because of a void in the record as to that crucial and critical information.").

we know, the sponsor could have obtained the amended affidavits by August 5 and then filed them with a cured petition three days later on August 8. If so, then the petition would have been timely. No wonder the filing date fact the majority selects to use—the fact upon which the entire majority decision depends—lies buried in the last line of a footnote. Worse yet, the majority lets the factual absence of the precise filing dates benefit the appellant, the party with a duty to bring up a record showing grounds for reversal.[4]

And why don't we know these legally operative facts? Why is the record silent? This issue about filing deadlines was never litigated below. The parties had no reason to plead or prove facts about filing dates because that's not the reason the county clerk rejected the petition. The county clerk rejected the petition because she found the canvassers weren't Arkansas residents, not because the petition was filed untimely. And the circuit court granted relief on the factual dispute the parties raised: Were the canvassers Arkansas residents?

A fundamental proposition of appellate procedure is that the parties raise the issues and the court decides them. Even the majority author has emphasized that "[t]his court regularly refuses to raise arguments on a party's behalf" and that "[t]his court does not entertain nonjurisdictional arguments that a party did not raise before the circuit court."[5] The United States Supreme Court follows these guidelines too: "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases

---

[4]*Schuldheisz v. Felts*, 2024 Ark. 137, at 4, 696 S.W.3d 817, 820.

[5]*Keesee v. State*, 2022 Ark. 68, at 18, 641 S.W.3d 628, 641 (Womack, J. concurring) Even so, in *Keesee*, the concurrence was upset with the majority *affirming* the circuit court on the well-established "right result, wrong reason" rationale. *Id*. at 13, 641 S.W.3d at 639 That's much different from the majority's decision here, which *reverses* the circuit court by finding facts absent from the record based on a legal theory neither party raised below or on appeal.

by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."[6]

Here's how it usually works: The parties fully litigate facts and law at trial, they create a record, and they get a ruling. If a party doesn't like how the circuit court decided one of those issues, then that party can file an appeal and argue specifically which error of law or fact the circuit court committed. We will not raise issues for a party.[7] We will not reverse a circuit court based on an argument raised for the first time on appeal.[8]

We adhere to these principles scrupulously in criminal appeals. We have said—repeatedly—that a criminal defendant must raise a constitutional issue at trial; if not, we will not address it on appeal.[9] Criminal defendants, whose life and liberty depend on our decision, get no special treatment when it comes to an alleged constitutional error. If we require strict compliance with preservation rules in criminal cases, we have even greater reason to do so in civil cases.

---

[6]*Yakus v. United States*, 321 U.S. 414, 445 (1944).

[7]*Sullivan v. State*, 2012 Ark. 178, at 5 ("This court has been resolute in stating that we will not make a party's argument for that party or raise an issue sua sponte, unless it involves the circuit court's subject-matter jurisdiction, which we will raise on our own."); *Edwards v. Edwards*, 2009 Ark. 580, at 8, 357 S.W.3d 445, 450; *Teris, LLC v. Chandler*, 375 Ark. 70, 88, 289 S.W.3d 63, 76 (2008).

[8]*Silkman v. Evangelical Lutheran Good Samaritan Soc'y*, 2015 Ark. 422, at 4, 474 S.W.3d 74, 76; *see also Ark. Dep't of Health v. Solomon*, 2022 Ark. 43, at 8 n.2; *Blackburn v. Lonoke Cnty. Bd. of Election Comm'rs*, 2022 Ark. 176, at 9, 652 S.W.3d 574, 581; *Brown v. Towell*, 2021 Ark. 60, at 12, 619 S.W.3d 17, 23; *Barrett v. Thurston*, 2020 Ark. 36, at 10, 593 S.W.3d 1, 7–8.

[9]*See, e.g.*, *Goodrum v. State*, 2025 Ark. 41, at 3; *Cullen v. State*, 2023 Ark. 172, at 3, 678 S.W.3d 20, 23; *Carter v. State*, 2023 Ark. 37, at 4, 660 S.W.3d 793, 796; *Break v. State*, 2022 Ark. 219, at 12, 655 S.W.3d 303, 311; *Braud v. State*, 2022 Ark. 169, at 3; *Muhammad v. State*, 2021 Ark. 129, at 5, 624 S.W.3d 300, 304.

The county clerk never addressed the issue about filing deadlines until the second supplemental briefing period. And only then because this court raised enough red flags by asking about it at oral argument—yes, the court raised the issue, not the parties. As for the carryover provision, the parties *never* even addressed this argument. Worse yet, the second ruling is not even a necessary ruling for the purposes of appeal. Why does it matter that the petition was filed too early for the 2026 election if the court has determined it was filed too early for the 2024 election? Holding the carryover provision unconstitutional is unnecessary and redundant. It is also an advisory opinion intended to resolve future litigation, and we don't issue opinions for that purpose.[10]

Nor has the Attorney General been notified that either statute—clothed in presumptive constitutionality—could be held invalid. We require parties to notify the Attorney General before we declare a statute unconstitutional. In fact, we just reaffirmed this doctrine and declined to address constitutional issues in another initiative appeal-presumably the majority overrules that case too. Were we that cavalier a year ago when we said this?[11] Even though this court has asked the parties to file two supplemental briefs, we have not asked for the opinion of the constitutional officer charged with defending the state's laws in court. At least one attorney general opinion suggests that there is no conflict between Ark. Code Ann. § 14-14-

---

[10] *Walker v. McCuen*, 318 Ark. 508, 516, 886 S.W.2d 577, 582 (1994) ("This court does not anticipate future litigation and does not issue advisory opinions.").

[11] *Lewallen v. Progress for Cane Hill*, 2024 Ark. 167, at 6, 699 S.W.3d 101, 105.

915(b)(1) and the Arkansas Constitution.[12] That opinion cited our own caselaw for support.[13] The majority overrules these cases without the fulsome analysis provided in them when first decided. When overruling precedent, we owe a better explanation and the majority should at least explain why.[14] The General Assembly should likewise be on alert that its legislation no longer has the protection of notice and representation by the Attorney General before being declared unconstitutional. Again, this shift is fundamental.

Moving forward, where do all these doctrines stand? Will the court now reach constitutional issues raised for the first time on appeal? What about in criminal appeals? Do we still follow preservation principles? Certainly, a criminal defendant facing life in prison would like for us to address potential constitutional defects. The court, or members of the majority, can now raise issues sua sponte for parties. It is imperative that the court treat all litigants the same. I am certain Arkansans will be thrilled to know this court will now be on the lookout for statutory provisions it will declare unconstitutional without being asked. After all, treating all litigants the same will require no less.

Our doctrines serve an important purpose. We require parties to raise issues below for fairness—the other side should have an opportunity to rebut or put on missing factual proof at the trial level. This is why criminal defendants must specifically identify the missing evidence in

---

[12]Op. Ark. Att'y Gen. No. 50 at 2 (2010) ("The requirement that petitions be filed 'not less than ninety (90) calendar days' before the election is plainly constitutional.").

[13]*See Armstrong v. Sturch*, 235 Ark. 571, 361 S.W.2d 77 (1962); *Fine v. City of Van Buren*, 237 Ark. 29, 371 S.W.2d 132 (1963); *Robie v. Bolton*, 260 Ark. 429, 541 S.W.2d 310 (1976).

[14]*Cf. Edwards v. Thomas*, 2021 Ark. 140, at 29, 625 S.W.3d 226, 240 (applying a four-part test to conclude that controlling precedent should be overruled) (Webb, J., concurring in part and dissenting in part).

a directed-verdict motion. That way, the court can "allow the State to reopen its case and supply the missing proof."[15] Here, the petition sponsors should have had the same opportunity. Perhaps they could have proved that their curative affidavits were filed with a curative petition within the constitutional timeline, thereby rendering their petition timely. And they should have been able to do this before the factual record closed.

These doctrines also promote judicial economy. This case serves as a prime example of wasted resources. The appeal has been submitted twice. We've had oral argument. We've ordered two additional rounds of briefing. This case could have been decided months ago had we stuck to the arguments the parties raised.

And what about the circuit court's own time? Had the issue been presented there first, the circuit court could have made an appropriate ruling, and the issue could have been resolved. The majority's decision to reverse for reasons never presented at trial results in unfairness not only to the losing party but also to the circuit court.[16] Not only that, but the residency question and burden shifting on sufficiency challenges are issues that had we answered, have far-reaching consequences. While the majority suggests how the dissent would decide this case, that is obtuse because we only wish it would let us resolve this appeal on the issue raised and litigated by the parties. Only then would we answer those questions on appeal.

BAKER, C.J., and HUDSON, J., join.
*Daniel R. Haney*, for appellant.
*Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellee.

---

[15]*Richardson v. State*, 2024 Ark. 81, at 4, 687 S.W.3d 576, 579.

[16]*Lamontagne v. Ark. Dep't of Hum. Servs.*, 2010 Ark. 190, at 6, 366 S.W.3d 351, 354 ("[I]t is incumbent upon the parties to raise arguments initially to the circuit court and to give that court an opportunity to consider them. Otherwise, we would be placed in the position of reversing a circuit court for reasons not addressed by that court.").